IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRUSTGARD INSURANCE COMPANY,

    Plaintiff,

        v.

AMBER CAMPBELL *and*, DAVID
CAMPBELL *individually and as parents and
natural guardians of G.C., a minor, and*
DAVID CAMPBELL *Administrator of the
Estate of A.L.C., a deceased minor,*

    Defendant.

16cv1013
ELECTRONICALLY FILED

## MEMORANDUM OPINION RE:
## PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 23 AND 27)

This is an insurance coverage dispute regarding a motor vehicle insurance policy issued by Plaintiff/Counterclaim Defendant Trustgard Insurance Company (hereinafter "Trustgard") to Defendants/Counterclaim Plaintiffs Amber and David Campbell (hereinafter the "Campbells").

Trustgard initiated this lawsuit by seeking a declaratory judgment that it is not obligated to provide stacked UIM coverage to the Campbells. Doc. No. 1. The Campbells filed an Answer and Counterclaims for a declaratory judgment that Trustgard is obligated to provide the stacked UIM coverage and for statutory bad faith. Doc. No. 13. Trustgard then filed a Motion to Dismiss the bad faith claim or, in the alternative, to bifurcate, (doc. no. 15), which the Court denied on September 30, 2016. Doc. No. 22. It appearing to the Court from those filings that the material factual issues regarding the Parties' cross-claims for declaratory judgment regarding UIM coverage are not in dispute, the Court ordered the Parties to file Motions for Summary Judgment. *Id.* Those motions are now pending.

**I. Brief Statement of Undisputed Facts**

The following facts are not disputed. On September 26, 2015, Amber Campbell and A.L.C., the Campbells' minor child, were pedestrians struck by an intoxicated driver. Doc. No. 40, ¶ 7. Amber Campbell sustained injuries and A.L.C. was killed by the collision. *Id.* at ¶¶ 8-9. G.C., another minor child of the Campbells, was present and witnessed the collision and experienced emotional trauma. *Id.* at ¶ 10. Thereafter, the Campbells notified Trustgard that they were entitled to stacked Underinsured Motorist ('UIM") coverage under their policy. *Id.* at ¶ 19. The Campbells also seek UIM coverage for emotional trauma suffered by G.C. *Id.* at ¶ 21.

The Campbells had purchased motor vehicle coverage from Trustgard since at least 2011, and at the time of the accident, the Campbells owned two vehicles, a 2000 Ford Excursion and a 2005 Cadillac Escalade, both which were insured under the Trustgard Policy. Doc. No. 40, ¶¶ 11 and 13. The Campbells purchased the Escalade on July 7, 2015, after contacting their insurance agent on or about July 6, 2015 to obtain insurance coverage for the vehicle. *Id.* at ¶¶ 15 and 17. In a letter dated July 6, 2015, the insurance agent sent the Campbells a new automobile Declarations Page and Financial Responsibility Card, reflecting the addition of the 2005 Cadillac Escalade to the Campbell's four other vehicles insured by Trustgard - - the 2000 Ford Excursion, a 2002 Chevy Silverado, a 1997 GMC Suburban, and a 1999 Jaguar XJ8, and a copy of a "Personal Auto Plus Endorsement." *Id.* at ¶ 16. Three of the vehicles were removed from the Policy prior to the accident on September 26, 2015. *Id.* at ¶ 18.

Under the Pennsylvania Motor Vehicle Financial Responsibility Law, UM/UIM coverage must be stacked, basically multiplied by the number of vehicles covered by the Policy, unless the insured waives stacked coverage and receives a reduction in premium. 75 Pa. C.S. § 1738(a). The Campbells had waived stacked UM/UIM coverage by executing valid waivers on February

2

28, 2012, August 9, 2013, and June 4, 2014. Doc. No. 40, ¶ 14. However, the Campbells did not execute waivers of stacked UM/UIM coverage in connection with the purchase of the Escalade. *Id.* at ¶ 19.

The Campbells argue that they are entitled to stacked UM/UIM benefits under the Policy because the Escalade was added to the Policy by endorsement and they did not execute a waiver of stacked coverage. Doc. No. 40, ¶ 19. Trustgard argues that the Campbells are not entitled to stacked UM/UIM benefits because the Escalade was added to the Policy by operation of the "Newly Acquired Auto" clause. *Id.* at ¶ 20. The Policy defines a "Newly Acquired Auto" as follows:

> K. "Newly acquired auto":
>
> 1. "newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:
>
>    a. A private passenger auto; or
>
>    b. A pickup or van, for which no other insurance policy provides coverage, that:
>
>       (1) Has a Gross Vehicle Weight Rating not exceeding 9,000 lbs; and
>
>       (2) is not principally used in any "business" other than farming or ranching.
>
> If the vehicle you acquired replaces one shown on the Declarations Page, you must ask us to insure that replacement vehicle within 30 days after you become the owner. Until you notify us, within that 30 day period, the replacement vehicle will have the same coverage as the vehicle it replaced.
>
> If the vehicle you acquire is in addition to any shown on the Declarations Page, you must ask us to insure that additional vehicle within 30 days after you become the owner. Until you notify us, within that 30 day period, the additional vehicle will have the broadest coverage limits we now provide for any vehicle shown in the Declarations.

> Changes to the policy resulting from additional or replacement vehicles, which you ask us to insure within 30 days of becoming the owner, will be made effective on the date you become the owner.
>
> Changes to the policy resulting from additional or replacement vehicles, which you ask us to insure on or after 30 days of becoming the owner, will be effective on the date you first notify us.

Doc. No. 40, ¶ 24.

The Trustgard Policy states that it will pay compensatory damages to an insured legally entitled to recover from the owner or operator of an underinsured motor vehicle because of "bodily injury" caused by an accident, which, under the Policy, means "bodily harm" and includes "sickness, disease or death but only which results from bodily harm to that person." Doc. No. 40, ¶¶ 25 and 26.

**II. Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

The Parties have filed cross motions for summary judgment. It is well established within the Third Circuit that the filing of cross motions for summary judgment "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008), quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

Under Pennsylvania law, the interpretation of an insurance policy presents a pure question of law. *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87 (Pa. Super. Ct. 2015).

### III. Discussion

As an initial matter, the Court finds that no genuine issue of material fact is disputed by the Parties. The Parties' Motions for Summary Judgment present two issues for the Court to decide based upon the undisputed facts. First, whether the Campbells' 2005 Cadillac Escalade was added to the Policy by endorsement - - which would require a separate waiver of stacked UM/UIM coverage, or whether the Escalade was added to the Policy pursuant to the "Newly Acquired Auto" clause - - which is continuous in nature and would not require a separate waiver of stacked UM/UIM coverage. Second, whether the Policy provides coverage for compensatory damages for emotional trauma suffered by the Campbells' minor daughter, G.C., who witnessed the accident that killed her sister and injured her mother, but who was not physically injured by the accident.

#### A. *The Escalade Was Added to the Policy by Endorsement*

The Parties agree that the *Sackett* trilogy of cases, and their progeny, govern the circumstances under which an auto insurer is obligated to obtain new waivers of stacked

5

UM/UIM coverage upon the addition of a new vehicle to an existing multi-vehicle policy. *See* Doc. No. 26, pp. 5-9 and Doc. No. 28, pp. 5-7, *citing Sackett v. Nationwide Mutual Ins. Co.*, 919 A.2d 194 (Pa. 2007) ("*Sackett I*"); *Sackett v. Nationwide Mutual Ins. Co.*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*"); and *Sackett v. Nationwide Mutual Ins. Co.*, 4 A.3d 637 (Pa. Super. Ct. 2010) ("*Sackett III*").[1]

The Parties also seemingly agree that, after the *Sackett* line, vehicles added to existing multi-vehicle policies by endorsement require a new waiver of stacked UM/UIM coverage, while vehicles added via "newly acquired vehicle" clauses do not require a new waiver. *Id. See also Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872, 876-77 (Pa. Super. Ct. 2014) (*en banc*) ("We first note that when a court is faced with analyzing [whether a UM/UIM stacking waiver is required,] it must focus on the following: (1) how was the "new" vehicle added onto the existing automobile policy (i.e., via endorsement or newly acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy?")

The Court finds that it is appropriate to apply the same analysis that was used by Pennsylvania Superior Court in *Bumbarger* and the United States Court of Appeals for the Third Circuit in *Seiple v. Progressive Northern Ins. Co.*, 568 Fed. Appx. 183 (3d Cir. 2014) (non-precedential), and will first examine the language of the "newly acquired vehicle" clause of the Policy (stated in full in Section I, *supra*) to determine whether it is applicable.

First, the undisputed facts show that the Escalade did not "replace [any vehicle] shown on the Declarations Page" of the policy. The Escalade was one of the vehicles stated on the

---

[1] Although the Parties do agree that the *Sackett* trilogy applies, a review of the cases following the *Sackett* trilogy cited by the Parties reveals that the law governing the waiver of stacked UM/UIM coverage is far from settled. In fact, the Pennsylvania Supreme Court has granted allocator in *Toner v. Travelers Home and Marine Ins. Co.*, 170 WAL 2016 (Pa. Sept. 8, 2016), to decide whether an insured who signed a UM/UIM stacking waiver at the inception of a single vehicle policy was entitled to stacked UM/UIM benefits because the insurer failed to obtain stacking waivers when second and third vehicles were added to the policy.

6

Declarations Page of the policy. Doc. No. 40, ¶ 16. Second, because the Escalade was listed on the Declarations Page of the Policy, it also is not a vehicle "in addition to any shown on the Declarations Page[.]" Accordingly, the Court finds that the Escalade was not added to the Policy via the "newly acquired vehicle" clause of the Policy, but was added by endorsement. As such, Trustgard was required to seek a new waiver of stacked UM/UIM coverage from the Campbells.[2]

### B. *The Policy Does Not Cover Compensatory Damages Absent Bodily Injury*

Trustgard moved for summary judgment on the issue that the Campbell's minor child G.C. suffered no bodily injury from the accident and is therefore not entitled to first-party or UM/UIM coverage for emotional distress. Doc. No. 28, pp. 13-14. The Campbells admit that G.C did not suffer a bodily injury, Doc. No. 35, p. 3, and did not otherwise address this issue in the summary judgment briefing. The Court finds that the terms of the policy are not ambiguous, and no coverage for emotional distress is available without bodily injury.

### IV. Conclusion

Based upon the foregoing, Defendants'/Counterclaim Plaintiffs' Motion for Summary Judgment, Doc. No. 23, is GRANTED. A separate Order will issue declaring that:

(a) the Trustgard Policy provides stacked UM/UIM coverage; and

(b) the UIM coverage policy limits are molded to reflect coverage in the amount of one hundred thousand dollars ($100,000.00) per person and two hundred thousand dollars ($200,000.00) per accident.

---

[2] The facts of this case, including the relevant insurance policy language, are very similar to those in *Bumbarger* where the Pennsylvania Superior Court, *en banc*, also found that a vehicle was not added to a multi-vehicle insurance policy via a "newly acquired auto" clause, and therefore the insurer was required to seek a new waiver of stacked UM/UIM coverage from the insured. 93 A.3d 872.

Plaintiff's/Counterclaim Defendant's Motion for Summary Judgment, Doc. No. 27, is GRANTED IN PART and DENIED IN PART. A separate Order will issue declaring that:

> First-party medical and UIM benefits are not available in the absence of sickness or disease resulting from "bodily injury." Therefore, the Trustgard Policy does not provide benefits for emotional distress to G.C. as a result of witnessing the accident.

SO ORDERED this 17th day of October, 2016,

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge